MARCOS ANDINO *v*. UNITED STATES

**No. 5331.**—Invoice dated Caracas, Venezuela, August 31, 1937.
Entered at San Juan, P. R., September 8, 1937.
Entry No. 584.

(Decided June 24, 1941)

*Orlando J. Antonsanti* for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

CLINE, Judge: This is an appeal for a reappraisement of four horses exported from Caracas, Venezuela, on August 31, 1937. Entry was made at the port of San Juan, Puerto Rico, at $200 each, plus crates valued at $10 each. The appraiser found different values for the horses, that is, $300 for the horse "Piritu," $400 for the horse "Bachiller," $400 for the horse "Koppet," and $50 for the horse "Alcon."

When the case was called for trial counsel for the plaintiff abandoned the appeal as to all of the horses except "Koppet" and the testimony he introduced was limited to the value of that horse.

The first witness called by the plaintiff was Mr. Marcos Andino, the importer, whose testimony was taken through an interpreter. He stated that the horse "Koppet" was given to him because it was useless as a racehorse; that one leg was in very poor condition, there being an excess bone growth in the fetlock; that the horse was sick when it arrived and afterwards died; that in his opinion it was not worth more than $100 at the time of importation into Puerto Rico. A photograph of the horse "Koppet" was introduced in evidence and marked "exhibit 1."

On cross-examination the witness testified that he saw the horse in Venezuela; that after importation he and Mr. Gonzalez went to talk with the appraiser at San Juan. He was shown a receipt for the horse "Koppet" and was asked if he left it with the appraiser and he stated that he did. The receipt was admitted in evidence and marked "exhibit 2." This exhibit is written in a foreign language but the witness translated it on the stand, showing that $200 for the horse "Koppet" is stated as the amount for which the receipt was given.

On redirect examination the witness testified again that the horse was given to him and that he did not pay the amount shown in the receipt, exhibit 2.

The plaintiff then called Mr. Julius L. Pietrantoni, a customs examiner at the port of San Juan, who testified that he examined the horse at the time of exportation; that the value on the invoice was

$200 but he did not accept that value and asked for an investigation which subsequently was made in Venezuela.

The plaintiff then recalled Mr. Andino and he was asked what was the market value of the horse upon its arrival at San Juan; he stated that it "was not worth $100" and was good for breeding. He testified also that the horse was not worth $200, which was the value used in the entry; that he wanted to make an average value of all of the horses in the importation.

The defendant offered in evidence a report by the American vice consul at Caracas, Venezuela, in which it is stated that the president of the Jockey Club was asked to ascertain the purchase prices and values of the horses. This report was admitted in evidence and marked "exhibit 3." The following statement appears therein:

The Jockey Club confirmed Mr. Andino's statement that the horse "Alcon" was given to him. This horse was such a poor starter, that his owner Mr. Rafael Rugero gave him to Andino, who is a trainer. According to the President of the Jockey Club, when this horse left Venezuela, he had not yet learned to start, and his value as a race horse was very small.

The President of the Jockey Club said that Andino had bought four horses, *Piritu*, *Bachiller*, and *Koppit* and one other for $1,350, and that the purchase price and values of *Piritu* was $300, that of *Bachiller* $400, and that of *Koppit* $400 instead of $200. The other horse, not exported, is worth about $250.

It appears from this exhibit that the horse "Alcon" was the one given to the importer rather than "Koppet" as he testified.

In the case of *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. 251, T. D. 46057, the court announced the burden cast upon the plaintiff in a reappraisement case, as follows:

We have had frequent occasion to endeavor to point out just what is required and upon whom the duty of proof primarily rests in appeals to reappraisement. In *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 165, T. D. 45276, we discussed a number of questions relating to reappraisement procedure at considerable length and cited numerous cases in support of the rules there stated. We shall not here restate the principles of law and practice there outlined.

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the nonexistence of an export value, or (2) an export value and the nonexistence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324.

There is nothing in the record in this case relating to either the foreign value or the export value of the horse "Koppet," which values are defined in sections 402 (c) and (d) of the Tariff Act of 1930. At the trial the plaintiff merely estimated the value of the horse at the time of importation. Such evidence does not overcome the presumption of correctness attaching to the appraiser's action. It is evident

that the plaintiff has not met the burden cast upon him by the following provision in section 501:

The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

There is not sufficient evidence in this record to enable the court to make a valid appraisement. Accordingly, the appeal is dismissed.